IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DOUGLAS LEE HILKEMANN, | ) | Case No. 25-80271-BSK |
| and NICOLE MARIE HILKEMANN, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| _____ | ) | |
| | ) | |
| Jerry L. Jensen, | ) | |
| Acting United States Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. 25- |
| v. | ) | |
| | ) | |
| DOUGLAS LEE HILKEMANN, | ) | |
| and NICOLE MARIE HILKEMANN | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT OBJECTING TO DISCHARGE**

Acting United States Trustee, Jerry L. Jensen, hereby objects to a discharge of all debts of Debtors pursuant to 11 U.S.C. § 727(a), and further alleges as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction in this adversary proceeding. 28 U.S.C. § 1334.

2. This is a core proceeding. 28 U.S.C. § 157(b)(2)(J).

3. Venue is proper pursuant to 28 U.S.C. § 1409(a) because this action arises in a case under Title 11 of the United States Code.

4. This Adversary Complaint is timely filed.

## Parties

5. Plaintiff, Jerry L. Jensen, is the Acting United States Trustee for Region 13, comprised of the States of Nebraska, Missouri, and Arkansas. The United States Trustee has standing and files this complaint in his official capacity pursuant to 11 U.S.C. §§ 307 and 727(c)(1).

6. Debtors Douglas Lee Hilkemann and Nicole Marie Hilkemann are residents of Cedar County, Nebraska, and are the Debtors in case no. 25-80271.

## Facts Common to All Counts

7. On March 28, 2025, Debtors filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code along with his Statement of Financial Affairs (SOFA) and other statements. (Filing No. 1, case no. 25-80271-BSK).

8. In signing the Petition, Debtors represented that, "*I have examined this petition, and declare under penalty of perjury that the information provided is true and correct. ... I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case and result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.*" (Filing No. 1, p. 6).

9. In signing the Declaration About an Individual Debtors' Schedules, Debtors represented, "*Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.*" (Filing No. 1, p. 48).

10. In signing the SOFA, Debtors represented that, "*I have read the answers on this Statement of Financial Affairs and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case*

2

*can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.*" (Filing No. 1, p. 55).

11. Debtors' Schedule A/B does not list firearms on line 10. (Filing No. 1, p. 11).

12. Debtors' Schedule A/B does not list any cash on hand on line 16. (Filing No. 1, p. 12).

13. Debtors' Schedule A/B does not list any insurance claims on line 33. (Filing No. 1, p. 14).

14. Debtors' Schedule A/B does not list any farm equipment, implements, machinery, fixtures and tools of the trade on line 49. (Filing No. 1, p. 14).

15. Debtors' Schedule E/F does not list Bill Heimes as a creditor. (Filing No. 1, pp. 20 - 40).

16. In the Statement of Financial Affairs (SOFA), in response to the question on line 10 asking, "*Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized or levied?*" Debtors checked, "No." (Filing No. 1, p. 52).

17. In the SOFA, in response to the question on line 15, asking, "*Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster or gambling?*" Debtors checked, "No." (Filing No. 1, p. 52).

18. In the SOFA, in response to the question on line 18, asking, "*Within 2 years before you filed for bankruptcy, did you sell, trade, otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?*" Debtors checked, "No." (Filing No. 1, p. 53).

19. In the SOFA, in response to the question on line 22, asking, "*Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?*" Debtors checked, "No." (Filing No. 1, p. 54).

20. In the SOFA, in response to the question on line 27, asking for Debtors to identify any business or any connections to any business within 4 years before Debtors filed bankruptcy, Debtors identified only Red and Black Diamond Dairy but not Debtor Nicole Hilkemann's father's dairy business.  (Filing No. 1, p. 55).

21. On April 29, 2025, Debtors filed Amended Schedules A/B and C and statements.  (Filing No. 14).

22. On April 29, 2025, Debtors filed Amended Schedules D and E/F.  (Filing No. 15).

23. During the § 341 Meeting of Creditors on May 1, 2025, Debtors appeared *via* Zoom tele-videoconference.

24. Before Debtors answered questions, Trustee Richard Myers administered an oath and Debtors swore to tell the truth.

25. During the meeting of creditors, Debtors testified they reviewed their bankruptcy filings and amended filings before they were filed and accurately revealed everything they owned or owed at the time, except that the filings omitted three assets (guns):  a 9mm Smith and Weston pistol, a 243 Remington (pre-1960), and a 270 Remington (pre-1960).

26. During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (7:23 – 7:53), in substantial portion, as follows:

Q (Trustee Myers):  Do you know who Stanley Hans is?
A (Nicole): Yeah.
Q: Is he your uncle?
A (Nicole): Yeah.
Q: Do you list him in your bankruptcy petition as a creditor?
A (Nicole): No.
Q: You owe him money?
A (Nicole): Not that I knew of.
Q: Did you buy hay from him?
A (Nicole): No.
Q: You never bought hay from Mr. Hans?
A (Doug): No.

4

27.     During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (7:56 – 9:58), in substantial portion, as follows:

Q (Trustee Myers):  Do have an Uncle named "Doug"?
A(Nicole): Yes.
Q:  Do you owe him money for cash rent?
A(Nicole):  I thought I paid that.
Q:  So the answer to my question is no you don't owe him?
A (Nicole): Yeah.
Q: And when did you pay him?
A (Nicole): …. Back in August of … 2022.
A: So that was in
Q: What was the rental period you paid him for in 2022?
A (Nicole): September 2021.
Q: So you didn't rent from him after that?
A (Doug): No.
A (Nicole): No.
Q: Did he provide any labor for you for your operations?
A (Doug): Yes.
A (Nicole): Yes.
Q: Did you pay him for that?
A (Nicole): I don't know.
Q: How about you sir? Sir, do you believe he rendered labor for you?
A (Doug): Yeah.
Q: Did you pay him for it?
A (Doug): I paid his electrical bill and water bill.
Q: You owe him for the labor he did for you?
A (Doug): Yeah.
Q: Is he listed as a creditor in your bankruptcy?
A (Doug): No.
Q: How much do you owe him?
A (Doug): I do not know.
Q: More than … $1,000, give me a guess.
A (Doug): More than $1,000.
Q: And for what period of time would that labor have been rendered?
A (Doug): Probably from 2020 to 21.
Q: What's his last name?
A (Doug): H-A-N-F.
Q: Where does he live? What town?
A (Doug): Wynot.

28.     During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (10:00 – 10:30 and 12:09 – 13:07), in substantial portion, as follows:

5

Q (Trustee Myers):  Do you owe someone named Bill Heimes for labor?
A(Nicole): Yes.
A (Doug): Yeah.
Q:  Is he listed as a creditor in your schedules?
A (Doug): Should be.
A(Nicole):  Should have been, yes.
Q:  You don't know whether he is or not?
(Debtors' Counsel, Frank Skrupa):  Mr. Trustee I can look that up.
\*\*\*
Q(Trustee Myers): …Bill Heimes, is he a creditor?
(Skrupa): No, I did not find him. I don't know if it was just an oral agreement or …
Q:  I believe the Debtors testified they owe Mr. Heimes for custom labor. It appears that he is not listed as a creditor in your bankruptcy petition.
(Skrupa): We will amend the schedules to reflect that.
Q:  How much do you owe Mr. Heimes?
A (Doug): Four thousand something.
Q: Four thousand?
A (Doug): Yeah.
Q:  And what period was that labor due for?
A (Doug): Uh… before we moved…
Q: Is there a reason he is not listed as a creditor in your petition?
A(Nicole):  He should have been.

29.    During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (10:32 – 11:56), in substantial portion, as follows:

Q (Trustee Myers):  Have you sold any assets via Facebook Marketplace in the last three years?
A(Nicole): Yeah.
Q:  You agree sir?
A (Doug): Yeah.
Q:  What kind of assets did you sell on Facebook Marketplace?
A (Doug): A bucket.
A(Nicole): Some personal items.
Q:  You sold any farm equipment?
A (Doug): Yeah like a bucket and like a … I'm drawin' a blank what it is, yeah.
Q:  A bucket that goes on what?  A Caterpillar?  A front-end loader, what?
A (Doug): Ah, yeah.
A(Nicole): It been like a bucket that goes on a …
A (Doug): Like a sileage bucket.
A(Nicole): Yeah, it goes on a tractor.
Q: Okay, what did you get for it?
A (Doug): Five hundred bucks.
Q:  When did you sell it?
A (Doug): Right when we moved.

6

        Q: I'm not sure I know when that is.
        A (Doug): February of '24 we moved.
        Q: Did you list that sale in your bankruptcy petition?
        A(Nicole): No, it was ... I didn't think I'd have to since it was before we filed bankruptcy.
        Q: So, are there other things that you disposed of and sold and got cash for it within a year prior to your bankruptcy filing that you didn't list?
        A (Doug): No.
        A(Nicole): That's about it.

30.     During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (13:00 – 13:55), in substantial portion, regarding a camper, as follows:

        Q(Trustee Myers): Do you own a camper?
        A (Doug): Ah we sold it.
        Q: So your testimony is you don't own a camper?
        A (Doug): No.
        Q: When was it sold?
        A (Doug): Ahhh, January?
        Q: Of '24?
        A (Doug): Yeah.
        Q: or '25?
        A (Doug): Twenty-five, sorry.
        Q: How much did you sell it for and to whom did you sell it?
        A (Doug): I sold it to a dealership, I got four thousand bucks.
        Q: Four thousand dollars?
        A (Doug): Yep.
        Q: What dealership?
        A (Doug): I-29.
        Q: Is that disclosed in your schedules as something you disposed of?
        A(Nicole): No.

31.     During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (13:55 – 15:11, and 15:29 - 16:06), in substantial portion regarding a storage unit, as follows:

        Q(Trustee Myers): Do have a storage unit in Wynot?
        A (Doug): Yes.
        Q: Did you disclose that in your bankruptcy petition?
        A (Doug): Should have, yes.
        Q: Did you is my question.
        A(Nicole): …maybe we missed that, um… (inaudible)
        Q: You have a schedule J that lists your … expenses. Do you show the monthly expenditure for the storage unit in your expenses?
        A(Nicole): I don't see it.
        Q: What's the name of the storage unit?

    A (Doug): Wynot … (inaudible)
    Q: What's in the storage unit?
    A (Doug): All of our household stuff … (inaudible)
    Q: So there's a place in your statement of financial affairs ... about five pages, where it asks if any of your property is in possession of another, like not in your possession. Did you list that you have all this stuff in a storage unit someplace?
    (Counsel Frank Skrupa): Mr. Trustee, I'm looking I do not see the storage garage.
    Q(Trustee Myers): Yeah, I don't think it's there either…
    (Skrupa): That's why we need to amend.
    ***
    Q(Trustee Myers): What's the value of the household goods in storage…(inaudible)
    A(Nicole): A thousand at most, pretty much baby clothes and the kids' dressers are in there.
    Q: So you're spending about $900 a year for the storage unit.
    A (Doug): Yeah.
    A(Nicole): Yeah.

32. During the meeting of creditors, the Ch. 7, Nicole Hilkemann testified that her father, Richard Hans, has an LLC.

33. During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (16:52 - 18:24), in substantial portion, regarding a racecar, a corvette, and trailers, as follows:

    Q(Trustee Myers): Do you folks own a racecar?
    A (Doug): No.
    Q: You own a corvette?
    A (Doug): No.
    Q: Have you sold a corvette?
    A (Doug): Yeah I sold it before we moved, August or July of '22.
    Q: Did you sell it to your uncle?
    A (Doug): No.
    Q: You sold the corvette though. Who'd you sell it to?
    A (Doug): I sold it back to where I bought it from Jerry's Chevrolet.
    Q: How much did you get for it?
    A (Doug): What I owed on the loan... it paid it off
    Q: How much?
    A (Doug): Nine thousand.
    Q: So you sold your corvette back, got no proceeds, because it was sold back for the amount of the loan?
    A (Doug): Yep, 'cause we were movin' and I didn't want the payment.
    Q: Is my statement correct, however, that you sold it back, got no net proceeds because ... paid of the loan?
    A (Doug): Yeah.
    Q: (inaudible) arrangement to reacquire it in the future?
    A (Doug): No.

8

    A(Nicole): No.
    Q: Did you also sell the trailer?
    A (Doug): Ah… what trailer?
    Q: The one you hauled the corvette around on?
    A (Doug): I never hauled it on a trailer.
    Q: Did you sell a trailer?
    A (Doug): I have sold a trailer, yeah.
    Q: To whom?
    A (Doug): Ah … depends on which one?
    Q: Is your Uncle now in possession of a corvette and a trailer?
    A (Doug): No.
    A(Nicole): No.

34. During the meeting of creditors, Debtor testified that a John Deere 5100 tractor worth about $50,000, for which they had about $20,000 in equity, was stolen. *See also* Filing no. 35, p. 7, line 35 and p. 18, line 15.

35. During the meeting of creditors, Debtors answered questions posed by a U.S.D.A. Farm Service Agency (FSA) representative (24:30 – 26:17), in substantial portion, regarding John Deere tractors, as follows:

    Q(Mr. Ben Henrick):  …the loader bucket that you mentioned was sold on Facebook Marketplace, was this the John Deere 620R bucket?
    A (Doug): Yeah, it went to that, but that was a bucket, that was something that I didn't trade in with it.
    Q: On our security agreement, we had a, that you owned a **John Deere 6130R tractor** that I understand you sold to Grossenburg Equipment, is this correct?
    A (Doug): Yeah, they bought it back, yeah.
    Q: As part of that sale or trade, did you trade for a John Deere 4230 tractor?
    A (Doug): Yes.
    Q: What did… I don't see this tractor listed on your schedules. What happened to this John Deere 4230 Tractor?
    A (Doug):  (Silence)(whispering)
    Q: I'm sorry I didn't hear…
    A (Doug):  Don't have it.
    Q: What did you do with it?
    A (Doug):  We don't have it.
    Q: What did you do with it?
    A (Doug): Never had it.
    A(Nicole): We never got it.
    Q: You never owed a John Deere 4230 Tractor?

9

A (Doug): No, John Deere Grossenburg took it back and then paid the note off and that was it (inaudible) … bank (inaudible) sell it.
Q: You never listed a John Deere 4230 tractor on Facebook Marketplace?
A (Doug): No, no.

36. During the meeting of creditors, Debtors answered questions posed by a U.S.D.A. Farm Service Agency (FSA) representative (27:14 – 29:27), in substantial portion, as follows:

Q(Mr. Ben Herink):  Doug and Nicole, your security agreement also lists a 2019 NDE S400L vertical feed mixer. I don't see that one on your schedules.
A (Doug): Yeah, …(inaudible) gonna give that back to John Deere.
Q: You sold it back to John Deere?
A (Doug): I'm gonna give it back to John Deere.
Q: So you currently own it now?
[Trustee Myers]: Before you go further, … Doug, I didn't think I understood what you just said.  Are you saying that you have it in your possession?
A (Doug): Yeah.
Q (Trustee Myers): Is it listed in your bankruptcy schedules as an asset you own?
A(Nicole): The feed mix…
Q (Trustee Myers): Is it listed in your schedules as an asset you own, yes or no?
A: (silence)(inaudible)
Q (Trustee Myers): When did you get it?
A (Doug): Before we moved out there, it would have been like, 2022.
Q (Trustee Myers): So since 2023, you've owned this piece of equipment. And now you say you are going to give it back to John Deere?
A (Doug): Yeah, in the bankruptcy.
Q (Trustee Myers): Where is it located?
A (Doug): At her dad's farm.
Q: Which is where?
A (Doug): In Wynot, Nebraska.
Q (Trustee Myers): Is anything else of yours at his farm?
A (Doug): Ah, yes.
Q: Did you list things in possession of your father at his farm on the bankruptcy petition?
A (Doug): Yes.
Q: But did you list this?
A (Doug): It should have been.
Q: Did you list it is my question.
A (Doug): Yes.
Mr. Shupka:  Mr. Trustee, are you asking about the vertical mixer?
Q (Mr. Herink): Mr. Shupka, the bankruptcy petition lists a NDCEO FS550 vertical feed mixer. But my question was regarding a 2019 F400L vertical feed mixer.
A(Nicole): No, no, that mixing wagon was traded in for the 550.

10

37.     During the meeting of creditors, Debtors answered (29:43 – 30:15), in substantial portion, regarding a gooseneck enclosed trailer, as follows:

Q(Mr. Ben Herink):  FSA holds a title lien on… a notated title lien with the DMV, on a 1995 Trailman trailer, gooseneck enclosed trailer. We still have the title on that. I don't see that in your schedules. Do you still own that?
A (Doug): Yes.
Q (Trustee Myers): Where is it located?
A (Doug): At her dad's farm, Wynot.
Q (Trustee Myers): Why isn't it listed in your schedules?
A(Nicole): I must have missed it.

38.     During the meeting of creditors, Debtors answered (36:00 – 38:45), in substantial portion, as follows regarding their sheep:

Q(Trustee Myers):  Douglas, you listed 25 sheep in your schedules?
A (Doug): Yes.
Q: Whose land are those sheep kept on?
A (Doug): My father-in-law, Rick Hans.
Q: And who pays for their care?
A (Doug): Ahh…, we do.
A(Nicole): We do.
Q: In your Schedule J you list no expenses for taking care of farm animals.
A (Doug): Her dad, her dad feeds them for us.
Q: Excuse me?
A (Doug): Her dad feeds them for us.
Q:  Free?
A (Doug): Yeah.
Q: Why?
A (Doug): Trying to help us.
***
Q(Trustee Myers): When did you last sell livestock?
A (Doug): Middle of March.  We sold the babies.
(Counsel Frank Skrupa) Mr. Trustee, … if I could interject…
Q(Trustee Myers): I'd just assume not.
(Skrupa) Okay, I was just trying to… ___
Q(Trustee Myers): I'd just assume you didn't.  You can come in at the end after I've found some answers from these people.  So you sold some lambs in March, correct?
A (Doug): Yes.
A(Nicole): Yes.
Q(Trustee Myers): Four thousand dollars worth?
A(Nicole): Yes.
***
A(Nicole): …I work for him. And we pay the household expenses.

11

Q: For who, the sheep?
A(Nicole): We live with my dad.
Q: So you're paying his household expenses?
A(Nicole): Yes.
Q: As compensation for him providing labor and transportation for your lamb and sheep business?
A(Nicole): He provides some hay for 'em, we do all the labor for our sheep and I help him with labor for his sheep.
Q: And you pay nothing in cash for any of this business?
A(Nicole): Not really.
Q(Trustee Myers): Is anything about this business relationship with your father disclosed in your bankruptcy schedules?
A(Nicole): In my bank statements it shows.
Q(Trustee Myers): No, I'm asking in the statement of financial affairs where it asks about business operations you have. Have you disclosed any of these relationships in those?
A(Nicole): No.

39.  During the meeting of creditors, Debtors answered (39:24 – 40:14), in substantial portion, as follows regarding a $4,000 check from the sale of lambs that was not listed in Schedule A/B as cash on hand:

(Counsel Frank Skrupa): I was going to say Mr. Trustee … Nicole, on the date that we filed your case, you would have already sold some lambs? And then you held onto a $4,000 check. Would you explain that to the trustee?
A(Nicole): Yes, we sold the lambs, before we filed it. And then, basically we pretty much ran out of money and had to cash the check. What it came down to. Had to feed the family.
Q: So your bankruptcy was filed on March 28.
A(Nicole): Yes.
Q: Did you have the $4,000 in your possession on the day you filed?
A(Nicole): Yes.

40.  During the meeting of creditors, the Ch. 7 trustee asked and Debtors answered (42:46 – 43:37), in substantial portion regarding sales on Facebook Marketplace, as follows:

Q: Nicole, is it your testimony that, just to make sure I heard this correctly, is it your testimony that you did not sell a 1977 John Deere 4230 on Facebook Marketplace?
A (Nicole): I don't know at this point.
Q: Did you sell a 1977 John Deere 4230 on Facebook Marketplace?
A (Nicole): No.
Q: Did you sell a manure pump on Facebook Marketplace?
A (Nicole): No.
Q: Did you sell a (inaudible) sprayer on Facebook Marketplace?
A (Nicole): No.

12

    Q: Did you sell a 1200 pound (inaudible) feeder or feeders on Facebook Marketplace?
    A (Nicole): No.

41. On June 3, 2025, Debtors filed Amended Schedules A/B and C and an Amended SOFA. (Filing No. 35).

42. On June 3, 2025, Debtors filed an Amended Schedule E/F. (Filing No. 36).

43. The U.S. Trustee Program (UST) was provided with images of listings of property sold by Nicole Hilkemann on Facebook Marketplace, including: a 1977 John Deere 4230 tractor for $17,500; a Houle Manure pump for $5,000; an Apache sheep feeder for $4,000; an IR air compressor for $1,000; a tire machine for $500; fence line silage bunks for $1,650; silage bunks for $750; a Blackstone flat top for $300. *See* **Exhibit 1**.

44. UST review of Debtors' bank statements show that they paid a total of $4,896.15 to "I29 RV" for "parts" / "parts/repair" for their camper in January and February, 2025:



#2139    01/14/2025    $2,847.70



#2156    02/26/2025    $2,048.46

45. UST review of Debtors' bank statements show that they paid $551.60 to "Rykens RV Park" on or about March 19, 2025.

13

46. On April 5, 2025, Debtors wrote a check (#2188) to "Gavins Point Rec."[1] in the amount of $649.06, for parts:



#2188                    04/15/2025                    $349.06

47. The UST requested documents pursuant to Rule 2004 regarding Debtors' alleged sale of their camper and Debtors provided an "Inventory Purchase Order" from I-29 RV Marine & Outdoor (see **Exhibit 2**), which includes a notation regarding "…*an estimate of the payoff amount on the RV **I am trading today***" near the bottom of the Order.

48. The UST called I-29 RV Marine & Outdoor and spoke to the manager, Steven Theron, who stated that Doug Hilkeman traded his 2010 Gulfstream Mako for a 2011 Forest River Sandpiper, a 35 foot camper, and received $4,000 as part of the transaction.

49. The UST found multiple checks that Debtors wrote for storage, payable to TL Ventures, LLC, J&L Storage, and Kellie McElhaney, including as recently as April 2025:



a.    #2005                    03/15/2024                    $935.00

---

[1] Gavins Point Recreational Center offers RV and trailer sales and servicing in Yankton, S.D. at 3311 Debra Blvd. 1.Gavins Point Dam is located in southeast South Dakota, near Yankton, S.D. and near Lewis & Clark Lake (the reservoir behind the dam).

14



b. #2013   04/15/2024   $1,045.00



c. #2191   04/16/2025   $995.00



d. #2057   08/20/2024   $475.00



e. #2024   05/02/2024   $285.00

15



f.

50. Debtors deposited checks from Menno Livestock on the following dates in the following amounts:

    a. 6/5/24 - $3,639.77
    b. 3/21/25 - $3,144.89
    c. 4/1/25 - $5,002.25
    d. 4/16/25 - $120.32
    e. 4/16/25 - $607.70

51. On April 4, 2025, Debtors wrote a check (#2178) to Hardington Feed & Chick for $1,249.76.

52. Despite Debtors' failure to list any expenses for livestock on their Schedule J and Debtors' testimony during the meeting of creditors that Nicole's father was paying to feed their sheep, it appears that Debtors are in fact spending money to feed their sheep. See para. 51, above.

53. Debtors' Schedules and statements failed to identify and/or disclose numerous items of information:

    a. properties owned by Debtors, including Debtors' three guns;

    b. properties owned by Debtors, including a 1995 Trailman gooseneck enclosed trailer;

    c. properties owned by Debtors, including Debtors' 2011 Forest River Sandpiper 35 foot camper;

    d. property sold by Debtors, including equipment and a tractor on Facebook Marketplace;

    e. property sold by Debtors, including lambs for $4,000;

16

    f.  cash on hand in the form of a $4,000 check that Debtors cashed post-filing;

    g.  a tractor that Debtors testified was stolen during the §341 meeting of creditors;

    h.  a potential insurance claim for a tractor Debtors testified was stolen;

    i.  at least one creditor;

    j.  Debtors' income from livestock sales;

    k.  expenses Debtors are paying (including Nicole's father's household expenses),

    l.  Debtors' business relationship with Nicole's father;

    m.  property owed by Debtors but in the possession of Nicole's father at his farm;

    n.  Debtors' storage unit(s); and,

    o.  other information regarding the Debtors' financial condition.

54.  Debtors did not truthfully answer questions regarding Debtors' sales of assets during the §341 meeting of creditors, including:

    a.  Debtors' tractor;

    b.  Debtors' camper; and

    c.  Debtor's sales of property and equipment on Facebook Marketplace, including a tractor.

55.  Debtors did not truthfully answer questions regarding Debtors' properties, expenses, and financial affairs during the §341 meeting of creditors.

### COUNT I: FALSE OATH
### PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

56.  Plaintiff incorporates all foregoing paragraphs by reference.

57.  Pursuant to 11 U.S.C. § 727(a)(4)(A), the Court shall grant a debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case "made a false oath or account."

17

Case 25-80271-BSK    Doc 38    Filed 06/09/25    Entered 06/09/25 15:38:07    Desc Main
Document     Page 18 of 20

58. A Debtor has an obligation to disclose all his assets, including all his accounts, even if he thought that they had little or no value. *Asbach v. Fontentot* (*In re Fontenot*), No. 20-50588, 2023 WL 3047842 at * 2 (Bankr. W. D. La., April 20, 2023)("Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the estate")(*quoting In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992)).

59. The Bankruptcy Code demands that debtors disclose all interests in property, the location of all assets, "prior and ongoing business and personal transactions," and that debtors exhibit "foremost, honesty." *National Am. Ins. Co. v. Guajardo* (*In re Guajardo*), 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997); *see also Korte*, 262 B.R. at 474 (the Bankruptcy Code "requires nothing less than a [debtor's] full and complete disclosure of any and all apparent interest of any kind") (*quoting Fokkena v. Tripp* (*In re Tripp*), 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998)).

60. "The debtor's petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *Home Service Oil Co. v. Cecil* (*In re Cecil*), 542 B.R. 447, 453-54 (B.A.P. 8th Cir. 2015); *Korte v. IRS (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).

61. False oaths include, "1) a false statement or omission in the debtor's schedules or 2) a false statement by the debtor at an examination during the course of the proceedings." *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992); *In re Chalik*, 748 F.2d 616, 618, n.3 (11th Cir. 1984) ("A material omission from a debtor's sworn statement of affairs or schedules presents grounds for denying a discharge under 11 U.S.C § 727(a)(4)(A)); 4 Collier on Bankruptcy § 727.04[1A]; *In re Scimeca v. Umanoff*, 169 B.R. 536, 543 (D. N.J. 1993)

18

("debtor's failure to reveal the existence or recent existence of a business would prevent creditors from having the opportunity to investigate the debtor's financial condition"); *Smith v. Grondin* (*In re Grondin*), 232 B.R. 274, 276 (B.A.P. 1st. Cir. 1999); *In re Wills*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999).

62. The omission of information or an incorrect statement on a bankruptcy petition or schedule constitutes a false oath. *Hamo v. Wilson* (*In re Hamo*), 233 B.R. 718, 727 (B.A.P. 6th Cir. 1999)(providing that "[s]tatements in bankruptcy schedules are given under oath"); *see also Retz v. Samson* (*In re Retz*), 606 F.3d 1189, 1197 (9th Cir. 2010)(holding that "errors and omissions in [the] Schedules and SOFA[,the statement of financial affairs,]... can qualify as false oaths under § 727(a)(4)(A)").

63. To deny a discharge under § 727(a)(4)(A), the statute necessitates no more than "an intentional untruth in matter material to an issue which is itself material." *Boroff v. Tully*, (*In re Tully*), 818 F.2d 106, 112 (1st Cir. 1987) (*citing Troeder v. Lorsch*, 150 F. 710, 713 (1st Cir. 1906)); *see also In re Sherman*, 67 F.3d. 1348, 1354 (8th Cir. 1995) (explaining that courts infer fraudulent intent from a debtor's course of conduct and consider "badges of fraud," which "can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose.")

64. Debtors' Schedules and SOFA included the Declaration, which states, "*Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.*"

65. At the § 341(a) meeting of creditors, Debtors testified as to the accuracy of the filed schedules and statements.

19

66. Debtors knowingly and fraudulently made numerous false oaths in their written filings and statements under oath in this bankruptcy case and therefore have made false oaths or accounts in violation of 11 U.S.C. § 727(a)(4)(A).

67. Debtors knowingly and fraudulently made numerous false oaths in their oral statements under oath in this bankruptcy case and therefore have made false oaths or accounts in violation of 11 U.S.C. § 727(a)(4)(A).

68. As a result, Debtors should be denied a discharge of any debt in this bankruptcy case pursuant to § 727(a)(4)(A).

WHEREFORE, the United States Trustee requests the Court enter Judgment declaring Debtor ineligible for discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and for such other and further relief as the Court deems just and proper.

Dated: June 9, 2025

Respectfully Submitted,

JERRY L. JENSEN
ACTING UNITED STATES TRUSTEE

By: /s/ *Amy B. Blackburn*
Amy B. Blackburn (MO #48222)
Trial Attorney
Department of Justice, Office of the United States Trustee, Region 13
Roman L. Hruska U.S. Courthouse
111 S. 18th Plaza, Suite 1148
Omaha, NE 68102
Phone: (402) 221-4300
Amy.B.Blackburn@usdoj.gov